IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| ARTURO AGUIRRE CRUZ, | ) | |
| Individually and as Next of Kin | ) | |
| to MAXIMINO AGUIRRE, Deceased; | ) | |
| MARIA LUZ VENEGAS ESTRADA, | ) | |
| Individually, as Next of Kin | ) | |
| to MAXIMINO AGUIRRE, Deceased, | ) | |
| and on behalf of MARITZA | ) | |
| AGUIRRE VENEGAS, a minor; and | ) | |
| AURELIANO VALDES BLAS, | ) | |
| Individually, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-2389 Ml/P |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

_____

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
_____

Before the Court is Defendant's Motion for Partial Summary Judgment, filed December 14, 2005. Plaintiffs responded in opposition on January 17, 2006. For the following reasons, Defendant's motion is GRANTED.

**I.   BACKGROUND**

The instant lawsuit arises out of a car accident that occurred on December 19, 2003, in San Roberto, Nuevo Leon, Mexico. Decedent, Maximino Aguirre ("Decedent"), and Plaintiffs, Arturo Aguirre Cruz ("Cruz"), Maria Luz Venegas Estrada ("Venegas Estrada"), Maritza Aguirre Venegas ("Aguirre Venegas"), and

Aureliano Valdes Blas ("Blas"), were traveling from Memphis to Mexico for the Christmas holiday.  Decedent was driving a 1998 Ford Explorer owned by his father, Cruz.  Plaintiffs were passengers in the vehicle.  The vehicle was involved in a single-vehicle accident rollover, which resulted in Decedent's death and injuries to Plaintiffs.

Plaintiffs are legal residents of the United States who resided in Memphis, Tennessee, at the time of the accident. Defendant contends that Plaintiffs are all Mexican citizens.

Defendant Ford is a corporation incorporated in Delaware, with its principal place of business in Dearborn, Michigan. Defendant manufactured the 1998 Explorer involved in the accident.  According to an affidavit submitted by Defendant, the 1998 Explorer was designed in Michigan and manufactured in Missouri.  (Mot. Partial Summ. J. Ex. E ¶2.)  The corporate decisions regarding the design, manufacture, distribution, and marketing of the Explorer were made in Michigan.  (Id. at ¶ 3.) According to Plaintiffs, the door latch was manufactured in Ontario, Canada.  (Mem. Opp'n Ex. 31.)  Ford first distributed the particular Explorer involved in the accident at the Oakley-Keesee Ford dealership in Memphis.  (Mem. Opp'n Ex. 20.) Plaintiffs allege that the original owners of the vehicle were Tennessee residents.  Cruz later purchased the Explorer second-hand in Tennessee.

Plaintiffs bring claims against Defendant under theories of

strict liability, negligence, violation of the Tennessee Consumer Protection Act, and breach of implied warranty of merchantability and fitness for a particular purpose.  Plaintiffs also seek punitive damages with respect to their claims of strict liability and negligence regarding the Explorer's defective design, manufacture, construction, and assembly, and Defendant's failure to warn of the defective nature of the vehicle.  Defendant contends that Plaintiffs are not entitled to punitive damages because the issue of punitive damages is governed by Michigan law, which prohibits punitive damages.[1]  Plaintiffs contend that the Court should apply Tennessee law to their request for punitive damages, which permits the recovery of punitive damages.

## II.   STANDARD REGARDING CHOICE OF LAW

In a case where federal jurisdiction is based on diversity of citizenship, "a federal court must apply the choice-of-law rules of the state in which it sits." Mahne v. Ford Motor Co., 900 F.2d 83, 85 (6th Cir. 1990)(citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941)).  Tennessee has adopted the approach of the Restatement (Second) of Conflict of Laws to determine the substantive law to apply to tort cases. Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992).  Under the Restatement's "most significant relationship" approach, "the law of the state where the injury occurred will be applied unless

---

[1] Defendant is not seeking to dismiss the substantive strict liability or negligence counts in the case, but is simply moving to dismiss Plaintiffs' request for punitive damages.

some other state has a more significant relationship to the litigation." Id.; see also MacDonald v. General Motors Corp., 110 F.3d 337, 342 (6th Cir. 1997).  In an action for personal injury or wrongful death, "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 . . . ."  REST 2d CONFL §§ 146, 176.[2]  While the law of the place of the injury occurred provides the default rule, "the Restatement approach allows a court to apply the law of a state that legitimately has a stronger interest in the controversy . . . ."  Hataway, 830 S.W.2d at 59.

In determining which state's law to apply, a court should

---

[2] Under the "General Principle" of the Restatement:

The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

REST 2d CONFL § 145(1).  Principles relevant to the choice of law determination under § 6 include:

(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

REST 2d CONFL § 6(2).

4

consider the following contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, [and] (d) the place where the relationship, if any, between the parties is centered." Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 474 (Tenn. Ct. App. 2003)(quoting REST 2d CONFL § 145). "[T]he court is to evaluate the[se] contacts 'according to their relative importance with respect to the particular issue,' and [] this is to be accomplished by carefully examining the policies behind the laws of the interested states and the interests of those states in the claim." MacDonald, 110 F.3d at 343 (quoting REST 2d CONFL § 145(2); citing Id. cmt. e); see also In re Disaster at Detroit Metro. Airport on August 16, 1987, 750 F. Supp. 793, 796-97 (E.D. Mich. 1989)(noting that substantive laws of different states may be applied to different issues--such as liability, compensatory damages, and punitive damages--in same case under principle of depecage).

## III. ANALYSIS

Defendant asks this Court to dismiss Plaintiffs' claims for punitive damages. Defendant contends that under the Restatement (Second) of Conflict of Laws (1971), Tennessee would apply Michigan law to the issue of punitive damages because Michigan "is the location of virtually all of the alleged misconduct at issue in this case" and is the location of Defendants's principal

5

place of business.  (Mem. Support Mot. Partial Summ. J. 5.)
Plaintiffs, on the other hand, contend that Tennessee law governs
because "the injuried [sic] parties are all residents and
domiciled in the State of Tennessee."  (Mem. Opp'n 10.)
Plaintiffs also note that Defendant has significant contacts with
Tennessee, the vehicle was purchased in Tennessee, and
Plaintiffs' trip resulting in the car accident originated in
Tennessee.  (Id.)

Applying the Restatement's choice of law analysis to the
instant case, the Court must first determine whether there is an
actual conflict between the laws of the states with interests in
the dispute.  Hataway, 830 S.W.2d at 55.  "It is well established
that generally only compensatory damages are available in
Michigan and that punitive sanctions may not be imposed."
McAuley v. Gen. Motors Corp., 578 N.W.2d 282, 285 (1998)(citing
Hayes-Albion v. Kuberski, 364 N.W.2d 609, 617 (Mich. 1984)(noting
that purpose of exemplary damages in Michigan is to make
plaintiff whole)); Thompson v. Paasche, 950 F.2d 306, 314 (6th
Cir. 1991)("Under Michigan law, however, punitive or exemplary
damages cannot be awarded where actual damages are sufficient to
make the plaintiff whole").  In contrast, Tennessee law permits
the imposition of punitive damages.  Hodges v. S.C. Toof & Co.,
833 S.W.2d 896, 901 (Tenn. 1992).  Accordingly, there is a true
conflict in this case, and the Court must determine which state's
law applies.

The Court must consider the "policies behind the laws of the

6

interested states." <u>MacDonald</u>, 110 F.3d at 343; <u>see also</u> REST 2d CONFL § 145 cmt. c ("The purpose sought to be achieved by the relevant tort rules of the interested states . . . [is an] important factor[] to be considered in determining the state of most significant relationship."). Tennessee law permits punitive damages in cases "involving only the most egregious of wrongs. . . [if] a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." <u>Hodges</u>, 833 S.W.2d at 901. Under Tennessee law, punitive damages "should operate to punish the defendant and deter others from like offenses." <u>Id.</u> at 900 (citing <u>Polk, Wilson & Co. v. Fancher</u>, 38 Tenn. 336, 341 (1858)). In the instant matter, Tennessee has an interest in punishing and deterring conduct which harms its domiciliaries.

In contrast, "[t]he purpose underlying the disallowance of punitive damages is protection of defendants from excessive financial liability." <u>In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979</u>, 644 F.2d 594, 613 (7th Cir. 1981). "Michigan has a predominant interest in protecting the financial integrity of corporations who conduct substantial business within its borders," <u>In re Aircrash Disaster Near Monroe, Michigan on January 9, 1997</u>, 20 F. Supp. 2d 1110, 1112 (E.D. Mich. 1998), and "hopes to promote corporate migration" into Michigan "[b]y insulating those companies" through its decision not to impose punitive damages, <u>In re Disaster at Detroit Metro. Airport on August 16, 1987</u>, 750 F. Supp. 793, 806 (E.D. Mich. 1989). Under

Michigan law, "the only 'proper application of damages beyond
those to person, property or reputation, is to make reparation
for the injury to the feelings of the person injured.'"
<u>Veselenak v. Smith</u>, 327 N.W.2d 261, 264 (Mich. 1982)(quoting
<u>Detroit Daily Post Co. v. McArthur</u>, 16 Mich. 447, 453 (1868)).
The Michigan Supreme Court has explained:

> The purpose of an action for tort is to recover the
> damages which the plaintiff has sustained from an
> injury done him by the defendant. . . . But in all
> cases it is to be distinctly borne in mind that
> compensation to the plaintiff is the purpose in view,
> and any instruction which is calculated to lead them to
> suppose that besides compensating the plaintiff they
> may punish the defendant is erroneous.

<u>Stillson v. Gibbs</u>, 18 N.W. 815, 817 (Mich. 1884); <u>see also</u> <u>Watson</u>
<u>v. Watson</u>, 18 N.W. 605 (Mich. 1884)(noting that in permitting
punitive damages the court "is not redressing the plaintiff's
injury, but it is punishing the defendant's misconduct, and it is
doing this with the aid of a jury who in respect to it are held
under none of the restraints which govern judicial action when
punishment is the avowed object of the proceeding").  Michigan,
Defendant's principal place of business and location of much of
the alleged misconduct, has an interest in shielding its resident
defendants from excessive liability.  Thus, both states have an
interest regarding the imposition of punitive damages.

Finally, the Court must consider the contacts enumerated in
the Restatement.  REST 2d CONFL § 145; <u>MacDonald</u>, 110 F.3d at
342.  While the Court should consider the above factors in its
analysis, not all factors will be relevant to each particular
issue.  <u>Id.</u> at 343, 346 (noting that Restatement test "is a fact-

8

driven approach that necessarily varies from case to case").

Numerous courts have held that the state of the plaintiff's domicile does not have an interest in imposing its state law regarding punitive damages. As the Seventh Circuit has explained:

> The legitimate interests of these states [of the plaintiffs' domicile], after all, are limited to assuring that the plaintiffs are adequately compensated for their injuries and that the proceeds of any award are distributed to the appropriate beneficiaries. Those interests are fully served by applying the law of the plaintiffs' domiciles as to issues involving the measure of compensatory damages (insofar as that law would enhance the plaintiffs' recovery) and the distribution of any award. Once the plaintiffs are made whole by recovery of the full measure of compensatory damages to which they are entitled under the law of their domiciles, the interests of those states are satisfied.

In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979, 644 F.2d at 613; see also Hodges, 833 S.W.2d at 900 (noting that "[t]he contemporary purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future.")(citation omitted). The majority of other courts that have addressed this issue hold the same. See, e.g., In re Aircrash Disaster Near Monroe, Michigan on January 9, 1997, 20 F. Supp. 2d at 1111 ("a decedent's state of domicile has no interest in the punitive damages issue); In re Disaster at Detroit Metro. Airport on August 16, 1987, 750 F. Supp. at 805 ("the domicile or residence of the plaintiff is not relevant to an evaluation of the choice of law issues concerning punitive damages because the decision by a state on whether to allow punitive damages focuses

solely on corporate regulatory versus corporate protective
policies"); Danziger v. Ford Motor Co., 402 F. Supp. 2d 236, 239
(D.D.C. 2005)("The District of Columbia, home of the Plaintiffs
both when the Explorer was purchased and when the accident
occurred, is interested in their compensatory recoveries but not
punitive damages."); Dobelle v. Nat'l R.R. Passenger Corp., 628
F. Supp. 1518, 1528-29 (S.D.N.Y. 1986)("the interest of
plaintiff's domicile has little relevance since punitive damages
are designed to punish a defendant, not to compensate a
plaintiff"); Kelly v. Ford Motor Co., 933 F. Supp 465, 469 (E.D.
Penn. 1996)(finding plaintiff's domicile and place of injury
irrelevant for punitive damages choice of law); see also Fanselow
v. Rice, 213 F. Supp. 2d 1077, 1084 (D. Neb. 2002)(finding that
the only jurisdictions with interests in punitive damages are
those with whom defendants have significant contacts).  The Court
accordingly finds that this factor does not weigh in favor of
Tennessee and that Tennessee, as the state of Plaintiffs'
domicile, does not have a significant interest in imposing
punitive damages in this case.[3]

Instead, the Court agrees with Defendant that Michigan, as
Defendant's principal place of business and the place where the

---

[3] The Court notes that in MacDonald v. General Motors Corp.,
110 F.3d 337 (6th Cir. 1997), the Sixth Circuit emphasized the
importance of the plaintiffs' and decedent's domicile in its
choice of law analysis regarding damages.  However, the MacDonald
court did not distinguish between compensatory and punitive
damages in choosing the applicable substantive law.

alleged misconduct occurred, has the most significant
relationship to the issue of punitive damages.  "When the primary
purpose of a rule of law is to deter or punish conduct, the
States with the most significant interests are those in which the
conduct occurred and in which the principal place of business and
place of incorporation of defendant are located." Keene Corp. v.
Ins. Co. of North America, 597 F. Supp. 934, 938 (D.D.C.
1984)(citing REST 2d CONFL § 145 cmt. c-e; In Re Air Crash
Disaster Near Chicago, Illinois, 644 F.2d at 613); see also
Symeon C. Symeonides, Resolving Punitive-Damages Conflicts, 5
Y.B. PRIVATE INT'L L. 1, 15-16 (2003)(stating that in punitive
damages conflicts, only three contacts are relevant: the place of
conduct, the place of injury, and the defendant's domicile; also
stating that "the victim's domicile should, in principle, be
irrelevant").  "If the primary purpose of the tort rule involved
is to deter or punish misconduct, . . . the state where the
conduct took place may be the state of dominant interest and thus
that of most significant relationship."  REST 2d CONFL § 145 cmt.
c.  The states where the conduct occurred and where the defendant
has its principal place of business "have an obvious interest in
preventing future misconduct; both states have an obvious
interest in protecting businesses located or acting within its
borders." In Re Air Crash Disaster Near Chicago, Illinois, 644
F.2d at 613; see also In re Disaster at Detroit Metro. Airport on
August 16, 1987, 750 F. Supp. at 804-05 (finding states with
legally significant contacts to be place of injury, place of

alleged misconduct, and principal place of business); <u>Kelly</u>, 933
F. Supp. at 469 (finding place of misconduct, state of
incorporation[4], and principal place of business to be "the most
critical contacts"); <u>In re Air Crash Disaster at Stapleton Int'l
Airport, Denver, Colorado, on Nov. 15, 1987</u>, 720 F. Supp. 1445,
1453 (D. Colo 1988)(finding Texas' relationship most significant
where Texas was "both the site of the conduct to which an award
of punitive damages could attach and defendants' principal place
of business").

In the instant matter, much of the alleged wrongful conduct
in this case occurred in Michigan.  Plaintiffs seek punitive
damages with respect to their claims regarding the Explorer's
defective design, manufacture, construction, and assembly, and
Defendant's failure to warn of the defective nature of the
vehicle.  As noted above, the Explorer was designed in Michigan,
and the corporate decisions regarding the design, manufacture,
distribution and marketing of the Explorer were also made in
Michigan.  While some of the conduct giving rise to Plaintiffs'
claims for punitive damages took place in other locations -- the
Explorer was manufactured in Missouri and its door latches were

_____

[4] Under the Restatement analysis, a corporation's principal
place of business is a more significant contact than its place of
incorporation.  REST 2d CONFL § 145 cmt. e.  In this case,
Plaintiffs concede that Defendant has "no true operating business
in Delaware."  (Mem. Opp'n 10.)  The Court finds that Defendant's
place of incorporation is not a significant contact.

manufactured in Ontario, Canada[5] -- the Court finds that most of the relevant conduct occurred in Michigan.  Additionally, Defendant's principal place of business is in Michigan.  Taken together, the Court finds that Michigan has the most significant relationship with respect to the imposition of punitive damages in this case.

The Court notes that the other contacts listed in section 145 do not weigh strongly in favor of applying another state's law regarding punitive damages.  Neither party contends that the law of Mexico, the place of the injury, should govern this dispute.  Additionally, where the defendant has "little, or no, reason to foresee that his act would result in injury in the particular state," this lack of foreseeability "will militate against selection of the state of injury as the state of the applicable law."  REST 2d CONFL § 145 cmt. e.  In the instant matter, Defendant distributed the Explorer in Tennessee and had little reason to foresee that subsequent owners would drive the vehicle in Mexico.  The final contact under section 145 is the place where the relationship between the parties is centered.  It is somewhat unclear where the relationship between the parties is centered in the instant matter -- Ford distributed the Explorer to the Oakley-Keesee Ford dealership, the dealership sold the car, and, Cruz subsequently purchased the car from an

---

[5] The Court notes that nothing in the complaint alleges misconduct relating to the door latches.

13

intermediate owner.  Even if the place where Cruz purchased the vehicle was clearly the location where the parties' relationship was centered, that location is less pertinent where the victim was not the original owner.  <u>See</u> Symeon C. Symeonides, <u>Choice of Law for Products Liability: The 1990s and Beyond</u>, 78 Tul. L. Rev. 1247, 1255 (2004).  Moreover, as the Seventh Circuit has noted:

> [T]he place where the relationship is centered would seem to have a low interest in either punishment or protection merely because the parties' relationship was centered within its borders. The alleged egregious acts would not have occurred there; thus, the state would have a low interest in controlling nonresident corporate behavior. Also, because the corporations were not located in that state, it would have a low interest in the protection of nonresident defendants.

<u>In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979</u>, 644 F.2d at 612 n.20.  Neither of these contacts override Michigan's significant interest in applying its law regarding punitive damages.  Accordingly, Michigan law will govern the imposition of punitive damages.  Because Michigan law does not provide for punitive damages, Plaintiffs' request for punitive damages is dismissed.

**IV. CONCLUSION**

For the reasons stated above, Defendant's motion for partial summary judgment is GRANTED, and Plaintiffs' claims for punitive damages are DISMISSED.  The Court does not make any comment on the law governing the underlying tort claims in this matter or the request for compensatory or other damages.

14

So ORDERED this 13th day of June, 2006.

           /s/ Jon P. McCalla        
           JON P. McCALLA
           UNITED STATES DISTRICT JUDGE